SUPREME COURT—IN ADMIRALTY.

GEORGE CONNOR *et als. vs.* THE PROCEEDS OF SALE OF CERTAIN PROPERTY SAVED FROM THE BRITISH SHIP "VIRGINIA."

Every seaman is bound to the business of the voyage, and to bestow his best efforts for the preservation of the ship and cargo.

He is ordinarily excluded from claims as a salvor.

When, however, his connection with the ship, in the capacity in which he shipped, has been, *de facto*, or by operation of law, dissolved, he may claim as salvor.

ALLEN, C. J.

This is a libel for wages and salvage. It is alleged that the British ship "Virginia," whereof James Withers was master, sailed from Greenock, in Scotland, on or about the 25th of September, 1858, bound for Melbourne, where she arrived and discharged her cargo, and sailed thence for Islands in the Pacific, in search of guano; and that the said ship, with the libellants on board, arrived at Baker's or New Nantucket Island, in said Pacific Ocean, on or about the 16th day of May last, and, after making some examination of said Island, attempted to get said ship under way, when she struck on a sunken coral reef, where she eventually became a total wreck.

It appears in evidence that, some few days after the vessel was wrecked, the Captain took the long boat and put on board of her a quantity of stores, the chronometers and some other

George Connor *et als. v.* the British Ship Virginia.

articles of value, with the chief mate and a number of seamen, and embarked for the Fejee Islands for assistance, with which he promised to return to libellants in about six weeks. He gave a memorandum of indebtedness for wages to nine of the libellants, which is as follows :

" George Connor, £7 13s. 4d. ; John Cox, £6 17s. 10d. ; Charles Anderson, £7 14s. 6d. ; Charles Wilson, £8 4s. ; Robert Cleland, £7 13s. 4d.; Donald Anderson, £14 8s.; James Humphreys, £7 16s. ; Henry Christie, £8 ; Thomas Hazard, £8 4s."

He also gave to Mr. Niel Allen, Robert Campbell and Thomas Hazard an authority in writing, of which the following is a copy :

" I here authorize you three, jointly, during my absence in the boat for the purpose of procuring aid for you and others, to take you off the Island, to hold and take entire charge of the wreck of the ship ' Virginia,' and all property belonging to her, until my return, and also as much of the wreck as possible."

The libellants remained on the Island nine weeks and two days, and devoted themselves to the saving the property as far as they were able. At length the brig " Josephine " appeared, and in view of the absence of the Captain for some three weeks longer than he declared to them that he should be absent ; of the limited quantity of water, and its bad quality ; of the difficulty and danger of leaving the Island in the boat they had, and of the infrequency of vessels passing the Island; they decided to embark on the " Josephine," for Honolulu, with the property saved from the wreck, where they arrived August 14th last past. They delivered the property saved to Mr. Green, Her Britannic Majesty's Acting Consul General, at that Port.

It appears further in evidence, that all the men aided in saving the property, including Thomas Peerie, Robert Campbell, William Brown, and Frank Silva, to whom wages were not due.

It is very clear that the seamen have a claim for the amount due them for wages, as stated by the Captain, on the proceeds of the sale of the articles saved from the wreck. (The "Neptune," 1 Hazzard, 239 ; " Sidney Cove," 2 Dod., 13.)

Are they further entitled to compensation for services rendered ·in saving the property, and if so, should it. be for services on a *quantum meruit,* or as salvage ?

It was evidently the intention of the Captain to put an end to the shipping contract by liquidating the account for wages at the time of his departure for aid ; and it is in evidence that the Captain stated to some of the men that their wages were stopped, but that they should receive a salvage for the property saved. They acquiesced in this suggestion.

Every seaman is bound to the business of the voyage, and to bestow his best efforts for the preservation of ship and cargo. Detentions, through perils and disasters of the sea, are risks assumed by seamen in every shipping contract, and no legal right arises to them from those causes, or their extra exertions to save the vessel, to demand an increased compensation. (Abbott on Shipping, 647 ; Miller *vs.* Kelley, 1 Abbot's Ad. Rep., 567.)

Doubts always arise when seamen attached to the ship lost make application for salvage service. They are in the employment and pay of the owners, and bound by their relation to the vessel to contribute their aid in saving her, and such persons are ordinarily excluded from claims as salvors, and they are allowed a reward in that character only in peculiar cases, as those of extraordinary peril, or gallantry, or when their exertions pass beyond the limits properly incurred by law. (The " Centurion," Mass. Reps.)

The general principle of law is, that the mariner's relation to the vessel is dissolved *de facto,* and by operation of law, when the master has abandoned the vessel and authorized the crew to leave her. Hence it is that persons having been attached to a ship which has been wrecked, and abandoned from necessity, may claim as salvors, when their services exceed their proper duty as seamen, and when their connection with the ship, in the capacity in which they shipped, has been, *de facto* and by operation of law, dissolved. (The " Two Catherines," 2 Mason, 319 ; Hobart *vs.* " Dragon," 10 Peters' Reports, 108–122.)

There must be some peculiar circumstances which will entitle the crew of the vessel lost to compensation for salvage.

In this case it appears that the wages were liquidated for the past, and a promise, made by the master, for remuneration by the way of salvage for all the property saved after he left the wreck. This is a mode of compensation which he preferred, and in which the seamen acquiesced. In this case it would not materially vary the amount of compensation, whether a specific sum should be awarded as a *quantum meruit* for the service, in the nature of wages, or for a salvage service. But, I regard the principle as sound that, under the circumstances of this case as detailed by the evidence, that the seamen could not sustain a suit for wages, and that their only remedy was for salvage. Had they saved no property, they would have not been entitled to wages, unless, perhaps, Neal Allen, Robert Campbell and Thomas Hazard, could claim by virtue of the direction, given them by the master, to look out for the property and save what they could. From the whole current of the master's declarations, it is very clear that he intended to pay them according to the property saved. And it was, doubtless, wisdom on his part to have taken this course, as the seamen were left without an officer to direct them.

In view of the evidence, I shall decree wages as per account stated by the master and acquiesced in by the libellants.

The net proceeds of the property saved was small, amounting to $953 26.

. The seamen of the ship wrecked were liable to the dangers and hazards which they did incur, and without regard to the saving of property, they would have been detained on the Island till the " Josephine " appeared.

In view of the service rendered, and of all the circumstancs of the case, I shall decree to each one of the libellants twenty-five dollars with costs and expenses, which are to be a charge exclusively on the proceeds of the property saved.

It is very clear that the libellants have an equitable lien on the proceeds of the sale of the property saved, stated by the British Acting Consul General to be in his hands.

J. Montgomerry for the libellants.

James Beazley, owner, and Mr. Green, Acting British Consul General, for the intervenient.